# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ILIANA CABAN-RODRIGUEZ,**

**Plaintiff,**

v.

**JAVIER D. JIMENEZ-PEREZ, et al.,**

**Defendants.**

**Civil No. 10-1998 (GAG)**

## OPINION AND ORDER

Iliana Caban-Rodriguez ("Plaintiff") brought this action against Javier Jimenez-Perez ("Jimenez"), Agustin Soto-Cruz ("Soto"), Maria Martell ("Martell"), and Zoraida Vera ("Vera") (collectively "Defendants"), alleging Defendants discriminated against her due to her political affiliation. Plaintiff's claims were brought pursuant to 42 U.S.C. § 1983 ("Section 1983"); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"); and Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. Laws Ann. tit. 31, §§ 5141 and 5142.

This matter is currently before the court on Defendants' motion for summary judgment (Docket No. 60). The motion was opposed by Plaintiff (Docket No. 73). Defendants filed a reply brief (Docket No. 87). After reviewing the submissions and pertinent law, the court **GRANTS** Defendants' motion for summary judgment (Docket No. 60).

### I.     Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED.R.CIV.P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-

**Civil No. 10-1998 (GAG)**

moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing to particular evidence on the record or by showing that either the materials cited to by the movant "do not establish the absence . . . of a genuine dispute," or that the movant "cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.    Relevant Factual

Jimenez has served as the Mayor of the Municipality of San Sebastian (the "Municipality") since January 2005. (See Docket No. 61 ¶ 2.) In order to run for re-election in 2008, Jimenez participated in a primary against Justo Medina ("Medina") to secure his candidacy for mayor from the New Progressive Party ("NPP") (See Docket No. 74 at ¶ 13.) The primary took place in March 2008. (See Docket No. 61-2 at 97.) Plaintiff supported Jimenez during his 2004 mayoral campaign. (See Docket No. 74 at 23 ¶ 14.) However, during the 2008 campaign, Plaintiff supported Medina's candidacy - e.g., participating in a local radio show, acting as a poll watcher and participating in motorcades. (See id.) Jimenez won the primary and the general election. (See Docket Nos. 61 at

2

**Civil No. 10-1998 (GAG)**

¶ 2; 74 at ¶ 2.)

Plaintiff has a position as an accounting clerk with the Municipality. (See Docket Nos. 61 at ¶ 7; 74 at ¶ 7.) Martell is the Director of the Office of Faith Initiatives and Communities and oversees the homeless center. (See id. at ¶ 3.) During the relevant time, Vera was the Director of Human Resources for the Municipality. (See id. at ¶ 4.) For two weeks, while Vera was on leave, Soto became the acting interim Director of Human Resources. (See Docket No. 61 at ¶ 6.) On October 15, 2009, during Vera's two week leave, Plaintiff was either assigned or transferred from the Early Head Start Program to the homeless center. (See Docket Nos. 61 at ¶¶ 5 & 6; 74 at ¶¶ 5 & 6.) Plaintiff was notified her new assignment would begin on October 19, 2009. (See Docket Nos. 74 at 24 ¶16; 87-1 at 8 ¶ 16.) The Municipality stopped sponsoring and participating in the Early Head Start Program. (See Docket Nos. 61 at ¶¶ 10-11; 74 at ¶¶ 10-11.) Plaintiff's exact job duties at the homeless center are in dispute. (See Docket Nos. 61 at ¶ 19; 74 at ¶ 19.)

Plaintiff did not report to the homeless center on October 19, 2009. Instead, she reported to the State Insurance Fund seeking treatment for back pain and depression. (See Docket Nos. 61 at ¶ 20; 74 at ¶ 20.) Prior to returning to work, Plaintiff met with Vera and Martell and requested she be allowed to perform her duties at the Federal Funds Office rather than at the homeless center. (See Docket Nos. 61 at ¶ 21; 74 at ¶ 21.) During that meeting, Plaintiff and Martell disagreed on Plaintiff's duties, primarily whether her duties were classified as inventory or accounting. (See Docket Nos. 61 at ¶¶ 22-27; 74 at ¶¶ 22-27.)

### III. Legal Analysis

#### A. Section 1983 Claim

Plaintiff brings claims under Section 1983 alleging First Amendment violations. Section 1983 creates a remedy for those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States. See Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To succeed on a Section 1983 claim, plaintiffs must prove that someone has deprived them of a right

**Civil No. 10-1998 (GAG)**

protected by the Constitution or the laws of the United States and that the perpetrator acted under color of state law. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

### 1.     First Amendment Political Discrimination

The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinion. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-Garcia v. Guillermo Rodriguez, 212 F. 3d 69, 74 (1st Cir. 2000). A *prima facie* case of political discrimination requires evidence that: (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) an adverse employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the adverse employment action. See Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 (1st Cir. 2007); Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006). A plaintiff "must point 'to evidence on the record which, if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus.'" Gonzalez-de-Blasini v. Family Dep't., 377 F.3d 81, 85 (1st Cir. 2004) (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996)). "The plaintiff is required to show that 'a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics.'" Larou, 98 F.3d at 662 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990)).

If the plaintiff proves the *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory reason for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs ("Mt. Healthy Defense"). Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In response, "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia, 212 F.3d at 77 (internal citations omitted). In the end, "[s]ummary judgment is warranted 'only if defendants' evidentiary proffer compelled the finding

**Civil No. 10-1998 (GAG)**

that political discrimination did not constitute a 'but for' cause for the adverse employment action.'" Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

The court addresses the fourth prong of the *prima facie* case because it finds that Plaintiff has failed to point to evidence that would allow a reasonable fact-finder to find that Plaintiff's political affiliation was a substantial or motivating factor in her transfer. Plaintiff references her own deposition on many occasions in an attempt to raise a factual dispute, however, such testimony merely amounts to a legal conclusion. See e.g., Docket No. 74-1 at 12 ("[I]t was my understanding that Mr. Javier Jimenez had transferred me as a reprisal for having backed or supported Mr. Justo Medina.") At the summary judgment stage, Plaintiff must assert facts that support a legal conclusion, not merely the conclusion unsupported by facts. See FED.R.CIV.P. 56. Other than Plaintiff's own statements claiming discrimination, Plaintiff points to no facts that would allow a reasonable jury to infer that Defendants discriminated against her due to her support for Medina. After reviewing the facts, the court cannot locate any facts that support Plaintiff's assertion. It is uncontested that most, if not all, employees of the Early Head State Program were fired or transferred. There has been no allegation or evidence that all this action was taken because all employees were of a different political affiliation. The evidence simply does not raise a material dispute as to whether political animus motivated Defendants' actions. Consequently, the court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's discrimination claim (Docket No. 60).

### 2. Retaliation

It is clear from the complaint, and Plaintiff's opposing brief, that Plaintiff is asserting a political discrimination claim. (See Docket No. 18.) However, it is equally clear that Plaintiff's claim is a quintessential retaliation case. Plaintiff claims she participated in protected activity, she experienced an adverse employment action and that there is a causal connection between the protected conduct and the adverse action. Assuming Plaintiff intended to allege a separate retaliation

5

claim, that claim must fail.

In a case such as this, where Plaintiff relies upon the timing of the events as evidence of retaliation, Plaintiff must demonstrate temporal proximity between the protected activity and the adverse employment action.  See Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006); Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004).  Temporal proximity is missing in this case.  The protected activities occurred prior to March 2008 and Plaintiff's transfer did not occur until October 2009.  At least nineteen months passed between Plaintiff's protected activity and the adverse employment action.  This amount of time is too long to allow an inference of retaliation.  See Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 32 (1st Cir. 2011) (holding seven months between requested accommodation and adverse action too long to support causal connection); Calero-Cerezo, 355 F.3d at 25 (noting period of three to four months too long to sustain causal connection based on temporal proximity).  But see Mariani-Colon v. Dept. of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (holding two month gap between protected activity and adverse action close enough to sustain causal connection).

**B.   State Law Claims**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims."  Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id.  The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis.  Id.

As all of the federal claims by Plaintiff have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims brought by Plaintiff.

**IV.   Conclusion**

6

**Civil No. 10-1998 (GAG)**

For the foregoing reasons, the court **GRANTS** Defendants' motion for summary judgment at Docket No. 60 and **DISMISSES** all claims before this court.

**SO ORDERED**

In San Juan, Puerto Rico this 4th day of August, 2012.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge